FILED
2016 Nov-16 AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | **CIVIL ACTION NUMBER:** |
| v. | ) ) | |
| LABOR SOLUTIONS OF AL, LLC f/k/a EAST COAST LABOR SOLUTIONS, LLC | ) ) ) ) | **JURY TRIAL REQUESTED** |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq. ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008, to correct unlawful employment practices on the basis of national origin and disability, and to provide appropriate relief to Oscar Corzo, Jorge Mercado, and a class of at least eight other Charging Parties and aggrieved individuals ("Claimants"), who were adversely affected by such practices. As alleged with greater particularity below, Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff", "EEOC" or "Commission") alleges that Defendant Labor Solutions of AL, LLC ("Labor Solutions of AL") formerly known as East Coast Labor Solutions, LLC ("East Coast") subjected Claimants to discriminatory treatment based on their national origin. In addition, Defendant subjected Claimants to discrimination when it failed to accommodate their disabilities.

1

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C §2000e-5(f)(1) and (3), and pursuant Section 107(a) of the ADA. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Alabama.

## PARTIES

2.     Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, as amended, and Title I of the ADA, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C §2000e-5(f)(1) and (3) and Section 107(a) of the ADA, 42 U.S.C. §12117(a).

3.     At all relevant times, East Coast continuously conducted business in the State of Alabama through its partnership and agreement with Pilgrim's Pride Corporation ("Pilgrim") at its Guntersville, AL poultry processing facility.

4.     Upon information and belief East Coast partnered with its owner, Labor Solutions LLC ("Labor Solutions") to accomplish its mission.  If confirmed, Labor Solutions may be joined as a real party in interest needed for complete relief.

5.     Labor Solutions of AL was formed to assume the business operations previously performed by East Coast, and has continuously conducted business in the State of Alabama since 2014.

6.     At all relevant times, Defendant Labor Solutions of AL and East Coast have been

2

employers engaged in an industry affecting commerce within the meaning of Section 101(5), 42 U.S.C. §§12111(5), and 101(7) of the ADA, 42 U.S.C. §§ 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and(h).

7.      At all relevant times, Defendant Labor Solutions of AL and East Coast have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8.      More than thirty days prior to the institution of this lawsuit, Charging Parties filed charges of discrimination with the Commission alleging violations of Title VII and the ADA by Defendant East Coast.

9.      On November 21, 2014, the Commission simultaneously issued to East Coast a Letter of Determination finding reasonable cause to believe that Title VII and the ADA were violated with respect to each Charging Party, as well as a class of employees and former employees, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.      On August 2, 2015, the Commission issued to East Coast a Notice of Failure of Conciliation advising East Coast that the Commission was unable to secure from it a conciliation agreement acceptable to the Commission with respect to the charges filed by Charging Parties.

11.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

12.     East Coast is a temporary staffing firm that was incorporated in West Virginia in 2010, never registered to do business in Alabama and terminated in November 2013.

13.     Labor Solutions of AL is a temporary staffing firm that was incorporated in West Virginia in October 2014, never registered to do business in Alabama and remains active.

14.     East Coast, Labor Solutions, and Labor Solutions of AL share the same managing officers, principal office address, and company email accounts. East Coast, Labor Solutions and Labor Solutions of AL comprise a joint enterprise.

15.     Pilgrim is a poultry processing company with 41 locations nationwide including its facility in Guntersville, Alabama ("Guntersville facility"). Pilgrim employs approximately 38,000 people nationwide, including 1400 employees at its Guntersville facility.

16.     In 2008, Pilgrim entered into a temporary staffing agreement with East Coast. Per the terms of the contract, East Coast was to provide ongoing temporary staffing services and workers. Specifically, East Coast was responsible for recruiting, interviewing, screening and assigning workers to Pilgrim. The contract detailed that each employee recruited and staffed for temporary work at Pilgrim would be an employee of East Coast.

17.     East Coast recruited Latino employees to work in Alabama via Spanish and English language newspaper, radio broadcasts, and notices in churches and schools. The recruitment process was continual in order to maintain a continual pool of applicants.

18.     Beginning in 2010, Claimants were recruited to apply for positions with East Coast with advertisements for "live hang chicken" positions at an Alabama poultry processing plant for $11.90 an hour, plus housing and benefits. They were informed they would be working approximately 40 hours a week with potential overtime.

4

## STATEMENT OF TITLE VII CLAIMS

19.     Since at least June 2008, Defendant Labor Solutions of AL and East Coast have engaged in unlawful employment practices at the Guntersville facility by subjecting Charging Parties and Claimants to disparate treatment on the basis of their national origin, in violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-2(a)(2) and 2000e-2(b). These unlawful practices include, but are not limited to, the following:

a. Claimants traveled at their own expense to Alabama based on representations that they would be reimbursed for their travel costs. Claimants were not reimbursed but were instead assessed on average $150 for "set up costs."

b. Non-Latino employees were not assessed these "set up costs."

c. Claimants were required to live in housing provided by East Coast for at least the first four months of their employment. Each claimant shared a two bedroom apartment with three other employees.

d. For their housing and utilities, Claimants were charged $68 a week for rent and utilities, $20 for furniture rental, $20 transportation and $10 for health benefits.

e. The apartments and furnishings were in poor repair and dilapidated.

f. East Coast assessed approximately $1088 per month total for each apartment from Claimants, despite the actual average rent for the apartment being approximately $330.

g. Non-Latino employees were not required to live in East Coast housing and were not subject to pay deductions for rent and utilities, furniture rental, or transportation.

h.  Despite representations that Claimants would be assigned to Live Hang Operator positions, a less strenuous and more desirable position in a processing plant, Claimants were reassigned to less desirable positions in the plant. More desirable assignments went to Non-Latino employees.

i.  Despite East Coast's representations to the contrary, Claimants were earning on average $8.90 an hour. They were working on average 20-30 hours a week.

j.  Claimants were subjected to more difficult work conditions than their non-Latino counterparts. They were consistently scrutinized and monitored by Supervisors, denied bathroom breaks on occasion, and denied a full hour for lunch.

k.  In addition to being denied bathroom breaks, Claimants were placed on segregated "Latino-only" production lines that were moving at a faster rate than the non-Latino production lines. Oftentimes, there were fewer employees placed on the Latino-only production lines. Despite the higher speed and less staff, Claimants were expected to produce at the same rate and quality as better staffed production lines.

l.  At times, Claimants would be pulled from a slower production line, replaced with a non-Latino worker, and then sent to a faster production line.

m.  Claimants were dependent on the transportation provided by East Coast to travel to and from the Guntersville facility. The transportation was consistently early or late, resulting in Claimants arriving one to two hours before their shift and having to wait one to two hours after their shift for the bus to arrive. Claimants had to sit outside while waiting for the bus and were not paid for the one to three hours a day they spent waiting.

n. Non-Latino employees were not required to spend one to three hours a day outside waiting for transportation.

o. Claimants were consistently harassed by non-Latino coworkers and supervisors at Pilgrims. Claimants were subjected to ethnic slurs and threats by both non-Latino coworkers and supervisors.

p. Claimants were screamed at by supervisors and, in one instance, had chicken kicked at him by a supervisor.

q. Claimants complained about the above practices to both Pilgrim and East Coast personnel. East Coast failed to take action to prevent the above practices.

20.    The effect of the practices complained of above has been to deprive Charging Parties and a class of employees and former employees covered by Title VII of equal employment opportunities and otherwise adversely affect their status as employees because of their national origin.

21.    The unlawful employment practices complained of above were intentional.

22.    The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of the Charging Parties and the class of employees and former employees covered by Title VII.

## STATEMENT OF ADA CLAIMS

23.    Since at least 2008, Defendant Labor Solutions of AL and East Coast have engaged in unlawful employment practices at the Guntersville facility by subjecting Claimants to discrimination by failing to accommodate their disabilities, in violation of Sections 102(a), (b)(5)(A)of the ADA, 42 U.S.C. §§ 12112(a),(b)(5)(A).These unlawful practices include, but are not limited to the following practices:

a.  At all relevant times, Claimants were qualified individuals with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§12102 and 12111(8).

b.  Claimants' disabilities were a result of their work at the Guntersville facility.

c.  Claimants sought medical attention on site at the Guntersville facility and attempted to seek medical attention off-site.

d.  Claimants requested the following as reasonable accommodations:

   i.   Breaks from the production line

   ii.  Additional time to rest and/or seek medical treatment

   iii. Time to sharpen their work tools to make the task less strenuous on their hands

   iv.  Re-assignment to alternative positions

e.  East Coast prevented Claimants from seeking medical attention by denying them the time off the production line.

f.  East Coast prevented Claimants from seeking medical attention by denying them the transportation to off-site medical attention.

g.  Despite paying for health benefits, Claimants were required to pay for their own off-site medical attention.

h.  East Coast denied Claimants' requests for re-assignment to alternative positions.

i.  Despite providing notes from medical providers, Claimants were also terminated by East Coast for purportedly failing to provide a medical excuse after returning from a disability related leave.

24.    The effect of the practices complained of above has been to deprive Charging Parties and a class of employees and former employees covered by ADA of equal employment

8

opportunities and otherwise adversely affect their status as employees because of their disabilities.

25.     The unlawful employment practices complained of above were intentional.

26.     The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of the Charging Parties and the class of employees and former employees covered by the ADA.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Labor Solutions of AL, East Coast, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of national origin, including the practice of segregating workers on the basis of national origin and subjecting them to disparate treatment.

B.     Order Defendant Labor Solutions of AL and East Coast to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees regardless of national origin, and which eradicate the effects of their past and present unlawful employment practices.

C.     Grant a permanent injunction enjoining Defendant Labor Solutions of AL, East Coast, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of disability.

D.     Order Defendant Labor Solutions of AL and East Coast to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified

9

individuals with disabilities, individuals with a perceived disability, and/or individuals with an association with a person with a disability, and which eradicate the effects of their past and present unlawful employment practices.

E.      Order Defendant Labor Solutions of AL and East Coast to make whole Claimants by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, front pay and reinstatement.

F.      Grant such further relief as the Court deems necessary and proper in the public interest.

G.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

C. EMANUEL SMITH
Regional Attorney
MS Bar #7473

MARSHA L. RUCKER
Supervisory Trial Attorney
PA Bar # 90041
Equal Employment Opportunity
Commission
Birmingham District Office

10

Ridge Park Place, Suite 2000
1130 22nd Street south
Birmingham, AL 35205
<u>Tel.</u> (205) 212-2045
<u>Fax</u> (205) 212-2041
emanuel.smith@eeoc.gov