FILED

2017 Mar-17  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Case No.: 4:16-CV-1848-VEH** |
| **LABOR SOLUTIONS OF AL LLC, f/k/a EAST COAST LABOR SOLUTIONS, LLC,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

This is a civil action filed by the Equal Employment Opportunity Commission (the "EEOC") against Labor Solutions of Alabama, LLC ("LSA") which the EEOC contends "was formed to assume the business operations previously performed by" a company named East Coast Labor Solutions, LLC ("East Coast"). (Doc. 1 at 2). The EEOC brings the action "on behalf of Oscar Corzo, Jorge Mercado, and a class of at least eight other Charging Parties and aggrieved individuals" (the "Claimants"), and claims that East Coast "subjected Claimants to discriminatory treatment based on their national origin," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII"). (Doc. 1 at 1). The EEOC also claims that East Coast "failed to accommodate [the Claimant's] disabilities" in violation of

the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (the "ADA"). (Doc. 1 at 1).[1]

The case comes before the Court on the Defendant's motion to dismiss the Complaint "pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, Federal Rule of Civil Procedure 12(b)(6)." (Doc. 14 at 1). For the reasons stated herein, the motion will be **GRANTED**, but the Plaintiff will be given the opportunity to amend to correct the deficiencies noted herein.

## I.   APPLICABLE STANDARDS

This Court has previously noted:

> Generally, jurisdictional challenges are addressed under Rule 12(b)(1), whereas Rule 12(b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (stating that where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)).

*Harris v. Bd. of Trustees Univ. of Alabama*, 846 F. Supp. 2d 1223, 1229–30 (N.D. Ala. 2012) (Hopkins, J.).

### A.   <u>Rule 12(b)(1)</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to assert

---

[1] Instead of two "counts" the Complaint has two sections–one entitled "Statement of Title VII Claims," and one entitled "Statement of ADA Claims."

the defense of lack of subject-matter jurisdiction. A motion to dismiss based on lack of subject-matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. Lack of subject-matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id.* Because the burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995) and *Menchaca v. Chrysler Credit Corp*, 613 F.2d 507, 511 (5th Cir. 1980)).

Attacks on subject-matter jurisdiction take two forms: (1) facial attacks, and (2) factual attacks. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Facial attacks on a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511). Factual attacks challenge "the existence

of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (same).

If a defendant makes a factual attack upon the court's subject matter jurisdiction, submitting evidentiary materials, the plaintiff is "also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

"[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Morrison v. Allstate Indem.* Co., 228 F.3d 1255, 1273 (11th Cir. 2000) (quoting *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)). "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Morrison*, 228 F.3d at 1273 (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).

## B.   Rule 12(b)(6)

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.    FACTS ALLEGED IN THE COMPLAINT

### A.    The "Employer(s)"

According to the Complaint,[2] East Coast, a temporary staffing firm, incorporated in West Virginia in 2010, never registered to do business in Alabama, and "terminated in November [of] 2013." (Doc. 1 at 4, ¶12). East Coast "conducted business in the State of Alabama through its partnership and agreement with Pilgrim's Pride Corporation ('Pilgrim') at its Guntersville, [Alabama] poultry processing facility." (Doc. 1 at 2, ¶3). The EEOC alleges that "[i]n 2008, Pilgrim entered into a temporary staffing agreement with East Coast," wherein "East Coast was to provide ongoing temporary staffing services and workers." (Doc. 1 at 4, ¶16) (emphasis supplied). The contract provided that "each employee recruited and staffed for temporary work at Pilgrim would be an employee of East Coast." (Doc. 1 at 4, ¶16) (emphasis supplied).

The Complaint states that "[u]pon information and belief[,] East Coast partnered with its owner, Labor Solutions[,] LLC [] ("Labor Solutions") to accomplish its mission." (Doc. 1 at 2, ¶4) (emphasis supplied). The Complaint notes that "if [it is] confirmed" that Labor Solutions partnered with East Coast, "Labor

---

[2] The document the Court refers to as the "Complaint" is document 1, which the EEOC has oddly entitled "Nature of the Action."

Solutions may be joined as a real party in interest." (Doc. 1 at 2, ¶4).

"Labor Solutions of Alabama, LLC," ("LSA"), the only Defendant in this case, is a different entity from "Labor Solutions." LSA is also a temporary staffing agency, incorporated in West Virginia in October of 2014, nearly a year after East Coast ceased operations. LSA has never been registered to do business in Alabama, and "remains active." (Doc. 1 at 4, ¶13). According to the Complaint, "East Coast, Labor Solutions, and [LSA] share the same managing officers, principal office address, and company email accounts." (Doc. 1 at 4, ¶14).[3] It is alleged that "[LSA] was formed to assume the business operations previously performed by East Coast, and has continuously conducted business in the State of Alabama since 2014." (Doc. 1 at 2). The Complaint alleges that "Defendant [LSA] . . . formerly known as East Coast . . . subjected Claimants to discriminatory treatment based on their national origin [and] failed to accommodate their disabilities." (Doc. 1 at 1) (emphasis supplied).

Because they are not relevant to the instant motion, the Court need not, and will not, set out the Complaint's specific allegations of discrimination and failure to accommodate. However, since all such actions concern conduct by East Coast, which ceased operations in November of 2013, logically, such acts must have occurred prior

---

[3] The Complaint also alleges that the three entities compromise "a joint enterprise." (Doc. 1 at 4, ¶14). This allegation is a legal conclusion, not a fact. Accordingly, it is not included in the Court's recitation of the facts alleged in the Complaint.

to November of 2013. Since LSA was not formed until October of 2014, none of the alleged acts were committed <u>directly</u> by it.

**B.      <u>Administrative Prerequisites</u>**

According to the Complaint, "[m]ore than thirty days prior to the institution of this lawsuit, Charging Parties filed charges of discrimination with the Commission alleging violations of Title VII and the ADA <u>by Defendant East Coast</u>." (Doc. 1 at 3, ¶8) (emphasis supplied). "On November 21, 2014, the Commission . . . issued to <u>East Coast</u> a Letter of Determination finding reasonable cause to believe that Title VII and the ADA were violated with respect to each Charging Party, as well as a class of employees and former employees[.]" (Doc. 1 at 3, ¶9) (emphasis supplied). At the same time, the Commission invited <u>East Coast</u> "to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief." (Doc. 1 at 3, ¶9). "On August 2, 2015, the Commission issued to <u>East Coast</u> a Notice of Failure of Conciliation advising <u>East Coast</u> that the Commission was unable to secure from it a conciliation agreement acceptable to the Commission with respect to the charges filed[.]" (Doc. 1 at 3, ¶10) (emphasis supplied).

## III.   ANALYSIS

### A.   <u>The Rule 12(b)(1) Motion</u>

The Defendant first alleges that the complaint should be dismissed because "it fails to allege that [LSA] employed the Claimants." (Doc. 14 at 7). It argues that the failure to allege that LSA employed the Claimants means that the Complaint should be dismissed "for lack of subject matter jurisdiction and failure to state a claim under Title VII and the ADA." (Doc. 14 at 8). For this proposition it cites *Brown v. ATG, Inc.*, No. 2:15-CV-00161-AKK, 2015 WL 3545984 (N.D. Ala. June 8, 2015) (Kallon, J.) and *Arrington v. Alabama Power Co.*, No. 2:16-CV-01355-JEO, 2017 WL 192756 (N.D. Ala. Jan. 18, 2017) (Ott, M.J.). Neither of these cases stand for the proposition that the failure to allege that a defendant was the Claimant's employer deprives this Court of <u>jurisdiction</u>. *See, Arrington*, 2017 WL 192756, at *3 (dismissing case pursuant to Rule 12(b)(6) because "there is no allegation in the complaint that [the Defendant] was [the Plaintiff's] employer."); *Brown*, 2015 WL 3545984 at *3 (dismissing complaint under Rule 12(b)(6) because defendant "is not a statutory 'employer' that is subject to liability under Title VII and the ADA."). Further, the Court is aware of no such rule.

The Defendant also argues that the EEOC has failed to exhaust administrative prerequisites to filing this action. As this Court noted in *Harris v. Bd. of Trustees*

*Univ. of Alabama*, 846 F. Supp. 2d 1223, 1230 (N.D. Ala. 2012), "[e]xhaustion of administrative remedies in Title VII cases functions as an administrate precondition to suit, rather than a <u>jurisdictional</u> prerequisite that would trigger application of Rule 12(b)(1)."[4]

The Court determines that it has subject matter jurisdiction over this claim seeking relief pursuant to Title VII and ADA since it "aris[es] under the . . . laws . .

---

[4] The Court wrote:

> Exhaustion of administrative remedies in Title VII cases functions as an administrate precondition to suit, rather than a jurisdictional prerequisite that would trigger application of Rule 12(b)(1). *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1003 (11th Cir.1982) (citing *Zipes* and concluding "that the conditions precedent to filing a Title VII suit are not jurisdictional prerequisites"). As such, the court finds that it is more appropriately treated under the Rule 12(b)(6) failure to state a claim standard. *See, e.g., McIntyre v. Aurora Cares, LLC*, No. CA 10–0208–KD–C, 2011 WL 2940939, at *2 n. 3 (S.D.Ala. July 21, 2011) ("[C]ourts tend to treat such motions as seeking dismissal in accordance with Rule 12(b)(6) as opposed to Rule 12(b)(1)."); *Banks v. Ackerman Security Systems, Inc.*, No. 1:09–CV–0229–CC, 2009 WL 974242, at *2 n. 3 (N.D.Ga. April 10, 2009) ("The Court dismisses these claims pursuant to Rule 12(b)(6) rather than 12(b)(1) because exhaustion of administrative remedies is not a jurisdictional prerequisite."); *Crawford v. Winter*, No. 2:07–cv–702–FtM–29SPC, 2008 WL 3260509, at *1 (M.D.Fla. Aug. 7, 2008) (considering motion to dismiss for failure to exhaust administrative remedies pursuant to Rule 12(b)(6) rather than Rule 12(b)(1)); *but see Luke v. Residential Elevators, Inc.*, No. 4: 10–cv–00524–SPM–WCS, 2011 WL 311370, at *4 (N.D.Fla. Jan. 28, 2011) ("Failure to exhaust administrative remedies prior to filing suit warrants dismissal based upon lack of subject matter jurisdiction under Rule 12(b)(1).").

> *Harris v. Bd. of Trustees Univ. of Alabama*, 846 F. Supp. 2d 1223, 1230 n. 7 (N.D. Ala. 2012) (Hopkins, J.).

. of the United States." 28 U.S.C. § 1331.

## B.   The Rule 12(b)(6) Motion

### 1.   *Successor Liability*

#### a.   The Federal-Common-Law Standard[5] for Determining Successor Liability Applies to Title VII and ADA Actions

The allegations in the Complaint allege that only <u>East Coast</u>, not LSA, employed all of the temporary employees of Pilgrim. Further, the Complaint does not allege that East Coast and the Defendant were "joint employers."[6] However, the EEOC argues that it has alleged plausible facts to infer so-called "successor liability." (Doc. 25 at 6).

It has been noted:

> The general rule is that a successor entity is not responsible for the debts and liabilities of a predecessor unless the successor agrees to assume those obligations. *See Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 821 (11th Cir. 1993). However, beginning with the United States Supreme Court's unanimous decision in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), this general rule yields in the context of labor and employment disputes, where important employment-related policies may justify imposing liability against a successor for its predecessor's discriminatory actions. As the Supreme Court observed in *Golden*, the reason for imposing liability in

---

[5] The phrase "federal-common-law standard" is used in *Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 906 (11th Cir. 2016).

[6] Nor could it, since it affirmatively states that the two entities never existed at the same time.

these circumstances is that, although the successor company "was not a party to the unfair labor practices" and now "operate[s] the business without any connection with [its] predecessor," the successor is in the best position to either remedy the prior unfair labor practices or to seek indemnification from its predecessor. *Id.* at 171 n.2, 94 S.Ct. 414. Therefore, labor strife is best avoided, federally guaranteed rights are best enforced, and victimized employees are best protected by holding the successor responsible. *Id*. at 185, 94 S.Ct. 414.

*Noel v. Terrace of St. Cloud, LLC*, No. 614CV597ORL40DAB, 2016 WL 1321504, at *3 (M.D. Fla. Apr. 5, 2016) (Byron, J.), *appeal dismissed* (Aug. 9, 2016).

The Eleventh Circuit has held that successor liability principles apply in the context of a Title VII action. *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983). However, it has not explicitly extended successor liability principles to the ADA.[7] The Court notes that, at 42 U.S.C. § 12117(a), the ADA invokes Title VII's powers, remedies, and procedures. *See,* 42 U.S.C .§ 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides[.]"). "[I]t follows that successor liability principles would equally apply to the ADA." *Noel*, 2016 WL 1321504, at *3 n. 3; *see also*, *E.E.O.C. v. Rockwell Int'l Corp.*, 36 F. Supp. 2d 1056, 1057 (N.D. Ill. 1999) (Gettleman, J.) (noting that the Seventh Circuit had expressly adopted the doctrine of successor liability in Title VII

---

[7] The parties do not address this issue in their briefs.

cases and holding that "[b]ecause the ADA incorporates the powers, remedies and procedures of Title VII, 42 U.S.C. § 12117, the court concludes that successor liability is available under the ADA."); *Coleman v. Keebler Co.*, 997 F. Supp. 1094, 1100 (N.D. Ind. 1998) (Cosbey, M.J.) ("The powers and remedies of the ADA are the same as those available under Title VII . . . and the Seventh Circuit has approved the successor employer doctrine in Title VII cases. . . . Thus, this Court assumes, as an issue of first impression in this Circuit, that the successor employer doctrine is applicable to ADA cases."); *McKee v. Am. Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996) (Cumming, J.) (Looking to "those courts which have interpreted Title VII, 42 U.S.C. 2000e et seq. successor liability as guidance for successor liability of ADA claims."); *Knox v. Brundidge Shirt Corp.*, 942 F. Supp. 522, 527 (M.D. Ala. 1996) (Albritton, J.), *aff'd*, 116 F.3d 1493 (11th Cir. 1997) (applying successor liability analysis in ADA context).

> **b.     There Is no set Criteria for Determining When one Entity Is the Successor to Another**

Having determined that successor liability principles apply to both Title VII and ADA actions, the next question is what criteria should the Court examine in order to determine whether a new entity is a successor to a previous one. Without explanation, the parties argue for the application of the factors set out in the Southern

District of Florida opinion of *Desporte-Bryan v. Bank of Am.*, 147 F. Supp. 2d 1356,

1362 (S.D. Fla. 2001) (Gold, J.), to wit:

> (1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify imposition of liability.

*Desporte-Bryan,* 147 F. Supp. 2d at 1362. The final factor includes such things as:

> (a) whether the new employer uses the same plant; (b) whether it uses the same or substantially the same work force; (c) whether it uses the same or substantially the same supervisory personnel; (d) whether the same jobs exist under substantially the same working conditions; (e) whether the successor uses the same machinery, equipment, and methods of production; and (f) whether he produces the same product.

*Id.* In *Desporte-Bryan*, Judge Gold stated that "[t]he case law articulates [these]

factors that the court must consider." However, he cited no case law from the

Eleventh Circuit Court of Appeals for that proposition. Accordingly, before going "all

in" on the factors set out in *Desporte-Bryan*, a review of Eleventh Circuit law on this

issue is prudent.

        **(1)**    ***In re Nat'l Airlines, Inc.*, 700 F.2d 695 (11th Cir. 1983) and the Balancing Test**

In the Eleventh Circuit, the seminal case for successor liability in the

labor/employment context is *In re Nat'l Airlines, Inc.* In that case, the United States

District Court for the Southern District of Florida held that National Airlines's

("National's") maternity leave policy violated Title VII because it discriminated on the basis of sex. *Id.* at 696. About three months later, the United States District Court for the Northern District of California held that the identical policy used by Pan American was <u>not</u> discriminatory on the basis of sex in violation of Title VII. Thereafter,

> Pan American acquired National through a merger. After the acquisition was announced, the Ninth Circuit affirmed the [California district court] decision thereby validating Pan American's policy. This opinion did not mention the acquisition or the judgment . . . in the Southern District of Florida.

*Id.* at 697. Following the merger,

> Pan American continued to enforce its mandatory maternity leave policy against pregnant flight attendants of both National and Pan American. In September, 1980, the former National flight attendants filed a motion in the Florida district court to enjoin Pan American from applying its policy . . .. The district court substituted Pan American as a defendant for National in January, 1982. Subsequently, in February, 1982, the district court denied the injunction. The court concluded that although Pan American would be liable as a successor corporation for money damages arising from the National lawsuit, on balance, it would be inequitable to restrain Pan American from pursuing a course of action theretofore declared valid by another federal district court.

*Id.*

In determining that successor liability principles should apply to Title VII cases, the Eleventh Circuit wrote:

> The Supreme Court has addressed the question whether a

15

corporation that takes the place of another corporation through merger, acquisition or otherwise (a "successor corporation") should be held liable for unfair labor practices of its predecessor, should be bound by labor contracts between the predecessor and its employees, or, instead, should not be affected by the labor relationships of its predecessor. *See Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). A review of these cases indicates that <u>the Court balances the interests of the employees and the employer and labor law policy generally</u>. *See, e.g., Howard Johnson Co.*, 417 U.S. at 262, n. 9, 94 S.Ct. at 2243, n. 9, 41 L.Ed.2d at 56-57, n. 9. <u>Such factors as the extent to which the successor corporation essentially continues the operations of the former corporation and whether the new corporation had notice of the former corporation's practices and policies are also a part of this inquiry</u>. *See, e.g., Golden State Bottling Co.*, 414 U.S. at 171-174, 94 S.Ct. at 418-420, 38 L.Ed.2d at 395-397. *See also, Boeing Co. v. International Association of Machinists and Aerospace Workers*, 504 F.2d 307 (5th Cir.1974), cert. denied, 421 U.S. 913, 95 S.Ct. 1570, 43 L.Ed.2d 779 (1975). Of greater importance, however, is the Court's pronouncement that the test for successor liability is fact specific and must be conducted "in light of the facts of each case and the particular legal obligation which is at issue." 417 U.S. at 262, n. 9, 94 S.Ct. at 2243, n. 9, 41 L.Ed.2d at 56-57, n. 9. Thus, the Court emphasized that:

> [t]here is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others.

*Id.*

*In re Nat'l Airlines, Inc.*, 700 F.2d at 698 (emphasis supplied).

The court's opinion did not focus on continuity of operations and notice.[8] Instead, the Court determined that "[u]nder these particular circumstances, the <u>balance</u> strikes against enjoining Pan American from continuing its policy." *Id.* at 699 (emphasis supplied).   The court noted that, on the one hand "former National attendants have a legitimate interest in working under discrimination-free conditions." *Id.* However, it found that interest to be outweighed by the fact that "Pan American successfully defended its policy against a Title VII challenge and has fully integrated former National attendants into its operations. It has a legitimate interest in treating its employees in an even-handed manner." *Id.* Under those circumstances, the Eleventh Circuit determined that "the district court did not abuse its discretion in denying injunctive relief against Pan American." *Id.*

### (2) *Evans Servs., Inc. v. N.L.R.B.*, 810 F.2d 1089 (11th Cir. 1987)

Four years after *In re Nat'l Airlines*, the Eleventh Circuit addressed successor liability again in *Evans Servs., Inc. v. N.L.R.B.*, 810 F.2d 1089 (11th Cir. 1987). In that case, the National Labor Relations Board (the "NLRB"), in a supplemental

---

[8] This is likely because, on appeal, Pan American did not dispute the district court's determination that it was a successor corporation to National for purposes of the money judgment entered in the Florida district court case. (*See In re Nat'l Airlines, Inc.*, 700 F.2d at 699 n. 5). The Eleventh Circuit noted, however, "that the Supreme Court has stated that a corporation may be a successor for some purposes but not for others." *Id.* (*citing Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974)).

backpay proceeding, charged a company named "Evans Services" with liability for

unfair labor practice for orders the Board previously issued against a company known

as "Evans Plumbing Company." The Board based its order on a finding that Evans

Services was either an alter ego or a successor of Evans Plumbing. In making the

determination that Evans Services was the successor to Evans Plumbing Company,

the Eleventh Circuit noted that

> [a] finding of successorship . . . involves a two-step inquiry. First, the
> Board must find that the new business retains common aspects of the
> prior business sufficient to allow the legal conclusion of
> "successorship." Second, the Board must conclude that the successor
> knew of the unfair labor practices at the time it purchased the business.

*Evans Servs.*, 810 F.2d at 1092 (*citing Golden State Bottling Co. v. N.L.R.B.*, 414 U.S.

168, 184, 94 S. Ct. 414, 425, 38 L. Ed. 2d 388 (1973)). The court then held that

> the evidence more than satisfies the first requirement. The boards of
> directors of the two corporations were primarily the same. John Mancin
> III was president of both the old and new businesses. Elizabeth Mancin
> was beneficial owner of Evans Plumbing and the majority stockholder
> of Evans Services. The same equipment, the same location, essentially
> the same line of business, many of the same employees, and even the
> same telephone directory advertisement linked the two corporations.
> Moreover, Evans Services sprang into existence the day after Evans
> Plumbing closed its doors.

*Id.* at 1092–93. The court did not initially state why it determined these facts to be so

critical to the analysis. However, later in its opinion the court noted that "to find

successorship the [Court] will consider not merely a change in title to the assets, but

18

other factors, as well." *Id.* at 1093. It then referenced a "non-exhaustive list of successorship factors" set out in *NLRB v. Jarm Enterprises, Inc.*, 785 F.2d 195, 200 (7th Cir.1986). Although not set out completely in the *Evans* opinion, in *Jarm Enterprises*, the Seventh Circuit set out the following factors to be considered:

> whether:[a] there has been a substantial continuity of the same business operations; [b] the new employer uses the same plant; [c] the same or substantially the same work force is employed; [d] the same jobs exist under the same working conditions; [e] the same supervisors are employed; [f] the same machinery, equipment, and methods of production are used; and [g] the same product is manufactured or the same service [is] offered ...

*N.L.R.B. v. Jarm Enterprises, Inc.*, 785 F.2d 195, 200 (7th Cir. 1986). Thus, it appears the Eleventh Circuit adopted the *Jarm Enterprises* factors in this analysis. *See*, *Brock v. LaGrange Equip. Co.*, No. CV 86-0-170, 1987 WL 39105, at *2 (D. Neb. July 14, 1987) (Storm, J.) (citing *Evans Services* for the proposition that successor liability involves the two-step inquiry stated therein, and citing *Jarm Enterprises* factors "to be considered in determining successorship under the first prong of the inquiry."); *but see, Knox v. Brundidge Shirt Corp.*, 942 F. Supp. 522, 527 (M.D. Ala. 1996), *aff'd*, 116 F.3d 1493 (11th Cir. 1997) (in ADA context citing *Evans Services* for the proposition that "[i]n determining the 'successorship' status of Russell Corporation, the court must consider the following factors: the similarity of members of the boards of directors of the two corporations; whether both corporations used the same

equipment; whether they operated at the same location; whether they operated in the same line of business and employed the same employees; whether advertisements directly linked the two corporations; and whether the new corporation began its business just after the old corporation closed its business.").

### (3)   *Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901 (11th Cir. 2016)

*Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 907 (11th Cir. 2016), is a recent unpublished opinion[9] based on facts which are comparable to those in the instant case. In *Hatfield*, an individual named Michael Arthur owned a company named Prime Staff Holdings, which he used to buy another company named Staff America. He also owned the defendant in *Hatfield*, A+ Nursetemps, Inc. A+ Nursetemps and Staff America were nurse registry and staffing agencies that, like the employment agencies at issue in the instant case, referred employees as shift workers to customer companies. The plaintiffs in *Hatfield* sought to impose liability upon Prime Staff Holdings and Staff America for FLSA violations committed by A+ Nursetemps, Inc.  The other companies claimed that, because A+ Nursetemps did not transfer assets to them, the judgment against A+ Nursetemps cannot be enforced against them.

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." U.S.Ct. of App. 11th Cir. Rule 36-2.

The Eleventh Circuit held that a transfer of assets was not required and applied

the successor liability factors from the Seventh Circuit's opinion in *Teed v. Thomas*

*& Betts Power Sols., L.L.C.*, 711 F.3d 763 (7th Cir. 2013), which were:

> (1) "the successor had notice of the pending" action; (2) "the predecessor ... would have been able to provide the relief sought in the [action] before the sale"; (3) "the predecessor could have provided the relief after the sale" (its "inability to provide relief favors successor liability"); (4) "the successor can provide the relief sought in the [action]"; and (5) "there is continuity between the operations and work force of the predecessor and the successor".

*Hatfield*, 651 F. App'x at 907.[10]

Holding that successor liability was appropriate, the court wrote:

> The facts at hand more than satisfy the federal standard for FLSA successor liability. The first factor, notice of the action is clearly satisfied by the connection, through Arthur, of the three nurse-staffing entities. After this action was filed in June 2011 against his wholly-owned company A+ Nursetemps, Arthur formed Prime Staff Holdings that September, which, he testified, was for the sole purpose of purchasing Staff America and continuing his nurse-registry and healthcare-staffing business. The following month, Prime Staff Holdings completed its purchase of Staff America through a stock-purchase agreement for ten dollars and a two-and-a-half percent interest for the preceding owner. Arthur was listed as the registered agent for Prime Staff Holdings and Staff America, as well as the managing member, president, and sole principal of Prime Staff Holdings, which was a director of Staff America. Obviously, the court did not clearly err in finding Prime Staff Holdings and Staff America were apprised of the

---

[10] *Hatfield* does not mention *Evans Services*, although it does discuss the Supreme Court's decision in *Golden State Bottling* and the Eleventh Circuit's opinion in *In re Nat'l Airlines*.

pending action against A+ Nursetemps.

For the second and third factors, it appears from the record that A+ Nursetemps would not have had the resources to satisfy the judgment before or after the transition. Those factors, as the district court concluded, are not determinative. . . . As explained in *Teed*, the predecessor's being unable to provide relief prior to the transition arguably weighs against applying successor liability because of the windfall the plaintiffs would receive; however, weighing against that consideration is the windfall the employer would enjoy when it avoids judgment by transitioning to a new company that has not expressly assumed its predecessor's liabilities. *Id*. at 765, 768. Regarding the third factor, the predecessor's inability to provide relief after the transition weighs in favor of successor liability. *Id*. at 766. Therefore, that the nurses could not have received the judgment from A+ Nursetemps either before or after the transition generally weighs in favor of applying successor liability to appellants.

The fourth factor—whether the successors can provide the relief sought by plaintiffs—is also satisfied. *See id.* at 766. The court did not clearly err in finding the companies have continued to be successful in the nurse-registry business and that, through a payment plan, they can provide the sought-after relief. Finally, and most unfavorable to appellants, the satisfaction of the substantial-continuity factor weighs overwhelmingly in favor of imposing successor liability. A+ Nursetemps never filed for bankruptcy, as Arthur did personally, but it did wind down its business operations while this action was pending in district court. At the bench trial, Arthur testified that A+ Nursetemps ceased business as of 3 May 2013. Just over two weeks later, the judgment in the DOL action was rendered against A+ Nursetemps; about a month after the DOL judgment, the judgment in this action was issued. Moreover, as stated supra, Arthur testified, and the district court found, that he created Prime Staff Holdings and Staff America to continue his nurse-staffing business; in addition, and more important, the court found he did so to avoid judgment in this action.

Furthermore, the companies also occupied the same office space

22

for at least some time. Although A+ Nursetemps'[s] business address was listed as 2008 Highway 44, with Prime Staff Holdings and Staff America's as 2020 Highway 44, Arthur testified that Staff America took over 2008 Highway 44 from A+ Nursetemps shortly after it ceased operations. Arthur sent himself a letter dated 3 May 2013, the day A+ Nursetemps ceased operating and shortly before the judgments were entered against A+ Nursetemps in the DOL, and this, action, requesting that A+ Nursetemps be allowed to "store its furniture and equipment assets in the front office until a Receiver makes arrangements to pick it up". Moreover, on 26 April 2013, Staff America signed a Sublease Agreement with A+ Nursetemps for three-quarters of its 2008 Highway 44 location.

Additionally, Staff America performs the same services—as a nurse registry and medical-staffing agency—for many of the same clients as did A+ Nursetemps. As the district court found, Staff America enters into contracts with healthcare providers, as A+ Nursetemps did, to supply them with nurses and other healthcare workers in its registry.

Most crucial to the district court's findings regarding continuity, Staff America employed many of the same persons as did A+ Nursetemps. Of the 169 nurses employed at A+ Nursetemps, 111 were subsequently employed at Staff America between January 2013 and April 2014. In other words, approximately 66 percent of the nurses who worked for A+ Nursetemps began working for Staff America during that time. As the district court found, those employees constituted "the heart and soul asset or goodwill of the business itself", a staffing agency. *Glausier*, 2015 WL 2020332, at *4. And, as stated supra, Arthur owned and managed all three entities. Obviously, an extremely large part of the value of the company, a registry of healthcare workers, was its employees; it would be a mere shell without them.

*Id.* at 907–09.

### (4)   Survey of District Court Opinions

District Courts in the Eleventh Circuit agree on no one particular approach. *See, e.g.*, *Noel*, 2016 WL 1321504, at *3 ("[c]ourts may consider a myriad of factors") (*citing Rojas v. TK Commcn's, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) and *Evans Servs.*, 810 F.2d at 1092–93); *Rosario v. Labor Ready Se., Inc.*, No. 14-21496-CIV, 2015 WL 12086100, at *6 (S.D. Fla. Aug. 31, 2015) (Lenard, J.) ("[T]he Court must first consider whether the successor employer had prior notice of the claim against the predecessor . . . whether the predecessor is able to provide the relief requested . . . whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify the imposition of liability[, and] [e]quitable principles."); *Boateng v. Ret. Corp. of Am. Partners, L.P.*, No. 1:12-CV-01959-JOF, 2013 WL 12061901, at *4 (N.D. Ga. Mar. 5, 2013) (Forester, J.) ("'Such factors as the extent to which the successor corporation essentially continues the operations of the former corporation and whether the new corporation had notice of the former corporation's practices and policies are also part of this inquiry.'") (*quoting In re National Airlines, Inc.*, 700 F.2d at 698); *Waker v. Republic Steel Corp.*, No. CA 71-P-0179-S, 1987 WL 109068, at *2 (N.D. Ala. Nov. 10, 1987) (Pointer, J.) (citing no factors but noting that "the Eleventh Circuit emphasized in the *National Airlines* case, [that] this involves a fact-specific balancing of interests—and, indeed, an

24

employer may be a successor for some purposes but not for others.").

### c.        Pleading Federal Common Law Successor Liability

It is clear is that "the test for successor liability is fact specific and must be conducted 'in light of the facts of each case and the particular legal obligation which is at issue.'" *In re Nat'l Airlines*, 700 F.2d at 698 (*quoting Howard Johnson*, 417 U.S. at 264, n. 9). The EEOC argues that the issue of successor liability is inappropriate to consider at this stage of the proceedings, citing *Meier v. Provima, Inc.*, No. 8:06CV336 T24TBM, 2006 WL 3876371, at *2 (M.D. Fla. May 11, 2006) (Bucklew, J.). In *Meier*, Judge Bucklew held that "[w]hether successor liability can be imposed is a fact specific inquiry that should not be resolved on a motion to dismiss."[11] Of course, *Meier* dealt with successor liability under Florida law, not federal common law, as in the instant case. Further, *Meier* was decided before the Supreme Court's

---

[11] The EEOC implies that *Kuhns Bros. v. Fushi Int'l, Inc.*, No. 3:06CV1917 PCD, 2007 WL 2071622, at *5 (D. Conn. July 16, 2007) (Dorsey, J.) contains a similar conclusion. (Doc. 25 at 7-8) ("As the holding in *Kuhn*[*s Bros.*] indicates,, the appropriate time to determine whether [the] Defendant is a successor in interest is after discovery."). However, in *Kuhns Bros.* the Defendant "argue[d] that [the] Plaintiffs inadequately pled successor liability and therefore lack standing to pursue a claim." *Kuhns Bros.*, 2007 WL 2071622, at *4. Citing the Supreme Court's opinion in *Pennell v. San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed. 1 (1988), the district court then noted that "[w]hen standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party." *Kuhns Bros.*, 2007 WL 2071622, at *4 (internal quotations omitted). Under that standard, the district court accepted as true "Plaintiffs' allegation that Defendant 'was formerly known as Dalian Fushi Bimetallic Manufacturing Company Ltd..'" *Id.* at *5. Furthermore, *Kuhns Bros.* is distinguishable because the court's holding was based on a finding that successor liability was adequately pled under Connecticut law, not federal common law.

decisions in *Twombly* and *Iqbal*, which require that a Complaint state enough facts to state a plausible claim for successor liability.[12]

Although the Court agrees with the EEOC that successorship does not have to be conclusively determined at this stage of the litigation, that does not absolve the agency from pleading facts which make its existence plausible. Other courts have dealt with this issue at the motion to dismiss stage. *See, e.g.*, *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("[T]hese allegations are enough to surmount a motion to dismiss under the federal standard."); *Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-CV-130-RP, 2016 WL 3081060, at *4 (W.D. Tex. May 31, 2016) (Pitman J.) ("Because Plaintiffs do not allege that Patterson-UTI has acquired assets from Torqued-Up, and provide no explanation as to how Patterson-UTI can otherwise be considered a successor to Torqued-Up, they have failed to sufficiently allege that Patterson-UTI can be held liable under a theory of successor liability."); *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 944 (N.D. Tex. 2014) (Fitzwater, J.) ("[The] plaintiffs' amended complaint alleges the *possibility* of successor liability, but it fails to show that plaintiffs are entitled to relief

---

[12] Under the pre-*Twombly/Iqbal* standard in place at the time, Judge Bucklew also determined that the following language was sufficient to provide notice under Rule 8: "Defendant Mirabilis, Inc. ("Mirabilis") became the successor in interest through merger or acquisition to Provima as the sponsor and fiduciary of the Plan." *Meier*, 2006 WL 3876371, at *1.

on their successor liability claim."); *Romita v. Anchor Tank Lines, LLC*, No. 11 CIV. 9641 DAB, 2014 WL 1092867, at *6 (S.D.N.Y. Mar. 17, 2014) (Batts, J.) ("[T]he Court finds that Plaintiffs plausibly allege Successors' liability for Predecessors' delinquent pension fund contributions.").

The Court notes that the Complaint in the instant case contains very few facts which are relevant to this inquiry. In particular, there are no facts suggesting "substantial" (or even any) continuity in business operations from East Coast to LSA. The Complaint contains no allegations that there was any <u>sale</u> of East Coast, or any of its assets, to LSA. Further, East Coast had been defunct nearly an entire year (since November of 2013) <u>before LSA was formed</u> in October of 2014. Also, there is no allegation that LSA employs substantially the same work force and/or supervisors as East Coast.[13] The Complaint does not allege that LSA operates at the same location as the predecessor.[14] There is no allegation as to whether East Coast could have provided relief before or after any alleged sale or transfer,[15] and there is no allegation

---

[13] The Court is aware that the business of both companies was temporary staffing. Obviously the Court here is referring to persons actually employed by East Coast and/or LSA to work in the <u>internal operations</u> of each company.

[14] The Complaint does allege that each share the same "principal office." However, the court reads this allegation to mean that they share the same principal <u>corporate</u> office location, not the same <u>business</u> location.

[15] The EEOC argues that "East Coast cannot provide relief because it no longer exists." (Doc. 25 at 7). While that statement seems to make sense on one level, the EEOC provides no authority for why a corporation, merely because it is no longer "exists" cannot satisfy a claim

as to whether LSA could provide any relief now.[16]

What the Complaint <u>does</u> allege is that East Coast and LSA are both temporary staffing agencies. It also alleges that the two entities share the same managing officers, principal office address, and company email accounts. However, these facts are not enough to demonstrate continuity when one considers the break in time between when East Coast ceased operations and LSA began.[17] Although the EEOC also alleges that "[LSA] was formed to assume the business operations previously performed by East Coast" (doc. 1 at 2, ¶5; doc. 25 at 7), and that LSA was "formerly known as" East Coast (doc. 1 at 1), such statements are mere "labels and conclusions" and "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678.[18]

---

with assets it owned.

[16] There is no allegation that LSA had notice of the claims against East Coast prior to any transfer. However, the Court may draw reasonable inferences from the facts which <u>are</u> stated. *Iqbal*, 556 U.S. at 678. In this case, it is reasonable to infer notice since the Complaint alleges that the two companies shared managing officers. Still, contrary to the EEOC's argument in its brief, LSA had no duty to remedy the EEOC's pleading errors by affirmatively alleging it <u>did not</u> have notice. (*See* doc. 25 at 9).

[17] LSA argues that *Dybala v. Landau & Heyman, Inc.*, No. 94 C 7719, 1997 WL 162846 (N.D. Ill. Mar. 27, 1997) held that there was no successor liability even the predecessor and successor companies shared the same shareholders, directors, officers, and employees. Importantly, the opinion in *Dybala* did not address <u>continuity</u>. It addressed whether the successor "had actual notice of [the] EEOC charge and claim at the time of the asset purchase." *Dybala*, 1997 WL 162846, at *3.

[18] The EEOC contends that it has actually provided more detail than is necessary at this stage. It first cites *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 616 (11th

Under the circumstances, the Court determines that the EEOC has failed to plausibly allege that LSA is the successor to East Coast. For that reason, the motion to dismiss is due to be granted.

The EEOC has moved for leave to amend to correct the deficiencies noted herein. (Doc. 25 at 15). In light of the number of factors which may be considered by the Court, and in keeping with the notion that "leave to amend should be freely given when justice so requires," FED. R. CIV. P. 15(a)(2), the Court will allow the EEOC an

Cir. 2008) where the Eleventh Circuit panel held:

> [T]o the extent that defendants claim Centimark failed to adequately plead successor liability, we reject that argument as well. Centimark's amended complaint gave defendants sufficient notice of the successor liability claim by alleging, inter alia, that "A to Z [Florida] is the alter ego of A to Z [Georgia] as it [is] a mere continuation of the business of the latter," and that A to Z Florida and A to Z Georgia have common shareholders.

*Centimark Corp.*, 288 F. App'x at 616. First, the above quoted language was deemed to be sufficient to plead a case for successor liability under <u>Florida</u> law, not federal common law as in the instant case. Also, there is no indication in *Centimark* that additional facts were pled demonstrating a break of nearly a year between the formation of the new entity and the cessation of the old, as there are in the instant case. *Centimark* was also an appeal from a bench trial and verdict, not an appeal from a ruling on a motion to dismiss pursuant to Rule 12(b)(6). Too, although *Centimark* was decided after *Twombly*, it was decided <u>before</u> *Iqbal* and there is no indication that standards and guidance from <u>either</u> case were considered. The Court is not persuaded by the *Centimark* decision.

The EEOC also cites *United Credit Recovery, LLC v. Bexten*, No. 6:11-CV-1714-ORL-31, 2012 WL 3854536, at *1 (M.D. Fla. Sept. 5, 2012) (Presnell, J.) and *De Mana Internet Sols., Inc. v. Internet Billing Co., LLC.*, No. 06-61515, 2007 WL 1455973, at *1 (S.D. Fla. May 16, 2007) (Cooke, J.). Like *Centimark*, neither of these cases arose in the context of and employment/labor dispute and both were based on state, as opposed to federal common law successor liability law. Further, like *Centimark*, there is no indication in either case that there was a break between entities like the one in the instant case.

opportunity to review the applicable case law and amend to state any facts which may be appropriate to this inquiry. *See, Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'") (*quoting Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991)).

### 2.   *Exhaustion of Administrative Remedies*

Even if the Complaint had plausibly alleged that LSA was the successor to East Coast, it would still be due to be dismissed since it is undisputed that LSA was not named in the original EEOC charge, or in any amendment thereto. The Eleventh Circuit has noted:

> A person seeking to file a lawsuit under Title VII must first file a charge with the EEOC alleging a Title VII violation, and then obtain authorization from the EEOC or, in the case of a political subdivision of a state government, the Attorney General. *See Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1358 (11th Cir.1994); 42 U.S.C. § 2000e–5(f)(1).  Generally, a party not named in the EEOC charge may not be sued in a later civil action. *Virgo*, 30 F.3d at 1358. That naming precondition "serves to notify the charged party of the allegation and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." *Id*.

> That naming precondition, however, must be liberally construed. *Id*. Sometimes a party not named in the EEOC charge may still be sued in a later civil action but only if doing so fulfills the purposes of the Title VII. *Id*. at 1358–59. In analyzing whether the purposes of Title VII

30

are met, this Court considers several factors, including:

> (1) the similarity of interest between the named party and
> the unnamed party; (2) whether the plaintiff could have
> ascertained the identity of the unnamed party at the time
> the EEOC charge was filed; (3) whether the unnamed
> parties received adequate notice of the charges; (4) whether
> the unnamed parties had an adequate opportunity to
> participate in the reconciliation [sic] process; and (5)
> whether the unnamed party actually was prejudiced by its
> exclusion from the EEOC proceedings.

*Id*. at 1359. That is not meant to be a "rigid test" and "[o]ther factors
may be relevant depending on the specific facts of the case." *Id*.

> One additional factor sometimes considered by this Court is
> whether an investigation of the unnamed party "could have reasonably
> grown out of [the EEOC] charge." *Hamm v. Members of Bd. of Regents*,
> 708 F.2d 647, 650 (11th Cir.1983); *see also Terrell v. U.S. Pipe &
> Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir.1981), *vacated on other
> grounds sub nom. Int'l Ass'n of Machinists & Aerospace Workers,
> AFL–CIO v. Terrell*, 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479
> (1982). That factor weighs in favor of inclusion of an unnamed party if
> the party's identity or participation in the alleged discrimination is or is
> likely to be uncovered during the EEOC's reasonable investigation
> growing out of the charge. *See Terrell*, 644 F.2d at 1123.

*Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456–57 (11th Cir. 2010)

(footnotes omitted).

As noted, it is undisputed that LSA was not named in the EEOC charge.

Regardless, the EEOC argues:

> Here, the Court should deny Defendant's Motion to Dismiss because
> Labor Solutions had notice of the EEOC charge, investigation, final

31

> determinations and conciliation. Specifically, the same person, Paris
> Wiley, owns and operates both Labor Solutions and East Coast, the
> entity named in the EEOC Charge. As stated above, both entities share
> a principal office address and business email account.

(Doc. 25 at 15). The <u>Complaint</u> does not allege any of these facts, and "[a] complaint

may not be amended by briefs in opposition to a motion to dismiss." *Gibbons v.*

*McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015); *see also, Huls v. Llabona*, 437

Fed.Appx. 830, 832 n. 5 (11th Cir.2011) (holding that an argument raised for the first

time in response to defendant's motion to dismiss, instead of in an amended

complaint, was not properly raised before the district court and would not be

considered on appeal); *McKally v. Perez*, 87 F.Supp.3d 1310, 1317–18, No.

14–22630–CIV, 2015 WL 758283, at *6 (S.D.Fla. Feb. 6, 2015); *Fleming v. Dowdell*,

434 F.Supp.2d 1138, 1148 n. 9 (M.D.Ala.2005) (finding dismissal of the Fourth

Amendment claim was proper because "[a] complaint may not be amended by briefs

in opposition to a motion to dismiss or motion for summary judgment") (citations

omitted). Further, the Complaint does not allege any facts which establish that the

"purposes" of Title VII are met by allowing LSA to be sued in this case.

Regardless, the Court deems that many of the facts which are relevant to the

successorship inquiry may also be relevant to this inquiry. Since the Court is allowing

amendment to address the former, it will also allow amendment to address the latter.

## IV.   CONCLUSION

For the reasons stated herein, the motion to dismiss is hereby **GRANTED**.

However, the EEOC may filed an Amended Complaint within 14 days which cures

the deficiencies noted herein. Should no amended complaint be filed by that date, this

case will be dismissed. *See*, Fed. R. Civ. P. 41(b).

    **DONE** and **ORDERED** this 17th day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge